UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLYMATIC CORPORATION and
JAMES AZZAR,

        Plaintiffs,                                        Case No. 1:11-cv-917

v.                                                          HON. JANET T. NEFF

INTERSTATE MEAT & PROVISION
d/b/a STERLING MEAT COMPANY,

        Defendant.
_____/

## OPINION

This is a patent infringement case involving Defendant's alleged sourcing of Plaintiffs' patented meat-packing paper from an infringing supplier. Defendant moves for dismissal of Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(2), 12(b)(3), or, in the alternative, for a transfer of venue to the proper jurisdiction under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631 (Dkt 23). Plaintiffs filed a response to Defendant's motion (Dkt 25), and Defendant filed a reply (Dkt 28). Having fully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the following reasons, the Court concludes that Defendant's motion is properly granted and this case dismissed.

## I. BACKGROUND

Plaintiff Hollymatic is an Illinois corporation that makes and sells machines and equipment for the processing of food products (particularly meat products); and supplies, including the patented paper at issue in this case, "the '091 Patent" (Dkt 1, Compl. ¶¶ 2, 6). Plaintiffs indicate that "each

sheet of paper has a semicircular recess on opposite sides to create a friction force when fed though the equipment" (Dkt 25, Pls. Resp. at 7). Plaintiff James Azzar, a Michigan citizen and resident, owns Hollymatic (Dkt 1, Compl. ¶ 2).

Defendant Interstate Meat & Provision d/b/a Sterling Meat Company is a Nevada corporation with its principal place of business in California (*id.* ¶ 3). Defendant's customers are limited to those located on the West Coast (Dkt 24, Def. Mem. at 6). Defendant processes "protein food products" and has purchased Plaintiffs' products, including the patented paper (Dkt 1, Compl. ¶ 6). Indeed, the parties have apparently had a business relationship for approximately twenty years (Dkt 8, Pls. Resp. at 2). Plaintiffs represent that the cumulative value of the goods Defendant has purchased from Plaintiffs exceeds $600,000 (*id.*).

Defendant's dealings with Plaintiffs have been conducted through Plaintiffs' "West Coast Holly" office, located in Upland, California (Dkt 24, Def. Mem. at 7). Defendant submits its purchase orders to this office and does business with the employees who work there (*id.*). According to Defendant, not one of its employees has "traveled to the State of Michigan for the purpose of doing business with [Plaintiffs] or for any other purpose on behalf of [Defendant]" (*id.*). Defendant mails payments for its invoices to a post office box located in Michigan (*id.*). A representative of Plaintiffs from Michigan visited Defendant "at least three or four" times since 2009 (Dkt 25, Pls. Resp. at 4). On one visit, this employee telephoned Plaintiffs' Michigan office from Defendant's factory floor (*id.*).

This case arises from Defendant's recent decision to "source these patented products from an unknown infringing supplier . . ." (Dkt 25, Pls. Resp. at 7). On August 30, 2011, Plaintiffs filed this patent infringement suit alleging that Defendant "has, in violation of 35 U.S.C. § 271, infringed

2

the '091 Reissue Patent at least by using, offering for sale, and/or selling the invention claimed in the '091 Reissue Patent, and/or by directing, contributing to, and/or inducing others to do the same" (Dkt 1, Compl. ¶ 12).

Following a Pre-Motion Conference on Defendant's proposed dispositive motion, this Court issued a briefing schedule on the motion, a schedule that permitted the parties to first determine whether they could agree on alternative dispute resolution (ADR) to instead resolve this case. The parties, having failed to agree on a method of ADR, filed their motion papers on February 7, 2012.

## II. DISCUSSION

### A. Personal Jurisdiction

Pursuant to FED. R. CIV. P. 12(b)(2), Defendant first argues in support of its Motion to Dismiss that this Court lacks personal jurisdiction over it. In the context of a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). When such a motion is decided without an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal citation omitted). The evidence before the court must be viewed "in a light most favorable to the nonmoving party." *Id.* Personal jurisdiction exists "in two forms: specific jurisdiction and general jurisdiction." *Indah v. SEC*, 661 F.3d 914, 920 (6th Cir. 2011).

### 1. General Personal Jurisdiction

When subject matter jurisdiction is established by the existence of a federal question, personal jurisdiction exists if the defendant would be subject to personal jurisdiction under the forum state's long-arm statute and if "'exercise of personal jurisdiction would not deny the defendant[] due

process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Michigan's long-arm statute for general personal jurisdiction over a corporation provides that

> [t]he existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1)  Incorporation under the laws of this state.
>
> (2)  Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.
>
> (3)  The carrying on of a continuous and systematic part of its general business within the state.

MICH. COMP. LAWS § 600.711

Due process concerns are governed by the standard articulated in *International Shoe* and expounded by its progeny: ensuring a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Further, "'[p]resence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on . . ." *Id.* at 317.

a. *Michigan's Long-Arm Statute*

The parties do not dispute that Defendant is incorporated in Nevada and is therefore not incorporated under the laws of Michigan. Further, Defendant has not consented to personal jurisdiction, as evidenced by this present motion. Thus, general personal jurisdiction can exist only

if Defendant's activities within Michigan can be established as "continuous and systematic." *See* MICH. COMP. LAWS § 600.711.

Defendant argues that Michigan does not have general personal jurisdiction over it because it has no continuous or systematic contacts with Michigan (Dkt 24, Def. Mem. at 10). Defendant states that it does not market or sell any of its products in Michigan and that all of its contacts with Plaintiffs have come through Plaintiffs' "West Coast Holly" office located in California and with Plaintiffs' employees who live and work in California (*id.*). The only contact with Michigan that Defendant concedes is remitting checks through the mail to a post office box located in Grand Rapids, Michigan (*id.* at 13). In response, Plaintiffs argue that Defendant conducted a substantial volume of commercial transactions with a company Defendant knew to be headquartered in Michigan (Dkt 25, Pl. Resp. at 13) . Plaintiffs have not alleged that Defendant carries on any other business activities in Michigan.

Plaintiffs argue that Defendant's contacts with Michigan are equivalent to those that conferred general jurisdiction in *Donley v. Whirlpool Corp.*, 234 F. Supp. 869 (E.D. Mich. 1964). In *Donley*, the court determined general personal jurisdiction existed in Michigan over an Illinois corporation that utilized the services of a representative in Detroit to solicit orders for its goods from customers in Michigan. 234 F. Supp. at 871-72. The corporation filled the orders in Illinois and shipped them to Michigan. *Id.* This accounted for approximately 5.8 percent of the corporation's annual sales. *Id.*

Absent from Plaintiffs' analysis, however, is an explanation of how these facts are analogous to the present case. In contrast to the corporation in *Donley*, which sought to sell its goods to customers in Michigan, Defendant is a buyer that purchased goods from a vendor headquartered in

Michigan, but conducted business with Defendant through an office in California. This Court holds that in contracting with Plaintiffs to purchase supplies, Defendant has not carried out a "continuous and systematic part of its general business" in Michigan as contemplated by MICH. COMP. LAWS § 600.711. Therefore, Michigan's long-arm statute does not confer upon this Court general personal jurisdiction over Defendant.

b. *Due Process*

Even if Defendant were subject to general personal jurisdiction in Michigan under the long-arm statute, exercise of such by this Court would not comport with due process. In conducting due process analysis, the Supreme Court has rejected "any talismanic jurisdictional formulas; 'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485-86 (1985) (quoting *Kulko v. California Superior Court*, 436 U.S. 84, 92 (1978)). Therefore this Court must evaluate the specific facts of this case in light of relevant case law.

In *Helicopteros*, the company over which general personal jurisdiction was sought was neither licensed to perform business nor did it have a permanent place of business in the proposed forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). The company's contacts with the state included conducting contract negotiations there; drawing funds from a bank located there; purchasing equipment and services from a company located there for "substantial sums;" and sending its personnel there for training. *Id.* The Court held that such contacts were not continuous and systematic and were therefore insufficient to satisfy due process and confer general personal jurisdiction in the proposed forum state. *Id.* at 418-19.

Here, the only analogous contact Defendant has had with Michigan is the purchase of equipment and services for a substantial amount of money over a period of years, which is a contact less substantial than the contacts rejected in *Helicopteros*. Therefore, exercise of general personal jurisdiction in this case would offend due process.

In sum, this Court lacks general personal jurisdiction over Defendant.

**2. Specific Personal Jurisdiction**

Determining the existence of specific personal jurisdiction under federal-question subject matter jurisdiction requires analysis of whether jurisdiction exists under the applicable state long-arm statute and whether subjecting the defendant to personal jurisdiction would offend due process. *See Bird*, 289 F.3d at 871.

a. *Michigan's Long-Arm Statute*

Michigan's long-arm statute for limited personal jurisdiction over a corporation provides the following:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1)   The transaction of any business within the state.
>
> (2)   The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> * * *
>
> (5)   Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

MICH. COMP. LAWS § 600.715.

Plaintiffs argue that personal jurisdiction exists under MICH. COMP. LAWS §§ 600.715(1) ("any business") and 600.715(5) ("contract for services") (Dkt 25, Pls. Resp. at 15). Plaintiffs rely on the fact that Defendant transacted a large amount of business with a company it knew to be headquartered in Michigan and that Defendant mailed checks to Grand Rapids, Michigan in return for the goods and services it received from Plaintiffs (*id.*). Plaintiff argues that these acts constitute transacting business within Michigan and performing under a contract in Michigan (*id.* at 16-18).

Defendant argues that if personal jurisdiction existed under § 600.715, it would be based upon (1) transaction of business within Michigan; or (2) committing a tort in Michigan (Dkt 24, Def. Mem. at 13). Defendant argues that it has never transacted business within Michigan (*id.*). Further, Defendant argues that it has not committed a tort within Michigan, because if patent infringement has occurred, it has occurred in California (*id.* at 14-15). Defendant maintains that placing orders to a company headquartered in Michigan is an insufficient contact to establish personal jurisdiction (*id.* at 12).

The underlying cause of action in this case is for patent infringement under 35 U.S.C. § 271. As the Supreme Court long ago recognized, "[i]nfringement, whether direct or contributory, is essentially a tort, and implies invasion of some right of the patentee." *Carbice Corp. of Am. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 33 (1931). Therefore, if personal jurisdiction in Michigan exists, then it would be under MICH. COMP. LAWS § 600.715(2). However, for an injury occurring under patent law "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee . . ." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994). Therefore, no personal jurisdiction under MICH. COMP.

LAWS § 600.715(2) exists because the infringing activity alleged occurred in California, not in Michigan.

Plaintiffs' arguments that specific personal jurisdiction exists under either § 600.715(1) or § 600.715(5) are unavailing. First, Plaintiffs have not shown that Defendant conducted "any business" in Michigan. In *International Tech. Consultants v. Euroglas S.A.*, the Sixth Circuit held that specific personal jurisdiction did not exist in Michigan over a foreign corporation that had transacted business with a company located in Michigan. 107 F.3d 386, 396 (6th Cir. 1997). While noting that a choice of law provision in the parties' contract (naming Swiss courts as the preferred forum) was an important consideration, the Sixth Circuit indicated that its "conclusion that it would be unreasonable for Michigan to assert jurisdiction over . . . defendants . . . is not altered by the fact that [the plaintiff] received payments from [the defendant] in Michigan." *Id.* at 394. The Sixth Circuit determined that the defendant's communication with the plaintiff by letters, telephone, and facsimiles sent to Michigan did not give rise to specific personal jurisdiction. *Id.* at 395. The Sixth Circuit reasoned that the defendant only directed its communications to Michigan because that is where the plaintiff happened to be located. *Id.*

In contrast, in *Neogen Corp.*, the Sixth Circuit held that a prima facie case for specific personal jurisdiction had been established under MICH. COMP. LAWS §§ 600.715(1) and 600.715(5). 282 F.3d at 888. The Sixth Circuit noted that under § 600.715(1), the "slightest act of business in Michigan" establishes personal jurisdiction. *Id.* (internal citations omitted). The defendant, a biomedical company, had accepted blood samples from customers in Michigan for analysis, mailed the results to those customers, and published the results to the customers through a password-protected website. The Sixth Circuit determined that such acts constituted adequate minimum

9

contacts with Michigan. *Id.* Because the defendant entered into contracts with Michigan customers for these services, the Sixth Circuit reasoned that mailing results to Michigan and giving customers in Michigan access to the results constituted performance under the contract in Michigan. *Id.*

The case at bar is more analogous to *International Technologies*, where specific personal jurisdiction was found not to exist. Here, the uncontroverted facts show that Defendant's only contact with Michigan has been to send purchase orders and checks to a post office box in Grand Rapids, Michigan, and to speak on the phone with an employee located in Michigan. This Court finds that Defendant's contact with Michigan was incidental to its business concerns and only occurred because that is where Plaintiff happened to be. This Court holds, therefore, that Defendant was not conducting business in Michigan under MICH. COMP. LAWS § 600.715(1).

Even if Defendant was conducting business in Michigan, § 600.715(1) would not allow this Court to exercise specific personal jurisdiction over Defendant. Section 600.715(1) authorizes the exercise of jurisdiction by courts in Michigan for causes of action "arising out of" business activity within Michigan. MICH. COMP. LAWS § 600.715. Here, as explained *supra*, the cause of action is essentially a tort that occurred, if at all, in California. Because the cause of action does not "arise out of" business activity conducted in Michigan, the long-arm statute does not authorize this Court to exercise personal jurisdiction over Defendant.

Similarly, even if Defendant entered into a contract for services within the meaning of MICH. COMP. LAWS § 600.715(5), § 600.715(5) would not allow this Court to exercise specific personal jurisdiction over Defendant. Section 600.715(5) authorizes the exercise of jurisdiction by courts in Michigan for causes of action "arising out of" performance of a contract. Again, this cause of action arises from essentially a tort that occurred, if at all, in California. Because the cause of action does

not arise out of a contract, the long-arm statute does not authorize this Court to exercise personal jurisdiction over Defendant.

b. *Due Process*

Even if the long-arm statute permitted this Court to exercise specific personal jurisdiction over Defendant, such would not comport with due process. In addition to the "minimum contacts" analysis required by *International Shoe*, *supra,* the question of due process in the context of establishing specific personal jurisdiction turns on whether "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). The Sixth Circuit has formulated a three-prong test to evaluate whether exercising specific personal jurisdiction satisfies due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Plaintiffs have failed to make a *prima facie* case under each of the three prongs of *Mohasco*.

First, Defendant has not availed itself of the privilege of doing business in Michigan. As explained *supra*, Defendant's mailing of checks to Michigan was not purposeful. Defendant presumably would have been content to mail checks wherever Plaintiffs directed. Second, this cause of action did not arise from activities in Michigan, but rather from Defendant's allegedly infringing activity in California. Third, both the acts of Defendant and the consequences of those acts have occurred in California, not in Michigan, making the exercise of jurisdiction by a Court sitting in

Michigan manifestly unreasonable.  Because Defendant could not reasonably have expected to be haled into court in Michigan for conduct undertaken in California, exercise of specific personal jurisdiction by this Court would offend due process.

One final consideration that weighs in favor of Defendant's position is "[t]he 'traditional jurisdictional premise' . . . that 'the plaintiff should seek out the defendant,' suing the defendant where he could be found." *International Tech. Consultants*, 107 F.3d at 393 (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989)).  This jurisdictional premise is particularly strong when, as is the case here, the litigants have relative parity of economic power and legal sophistication, and the plaintiff sought out the transaction that later is claimed to lay the basis for jurisdiction in the plaintiff's state.  *See id.* at 393.

For the foregoing reasons, this Court holds that it cannot properly exercise either general or specific personal jurisdiction over Defendant.

### B.  Venue

Defendant also moves to dismiss under FED. R. CIV. P. 12(b)(3) for lack of proper venue. Venue in patent infringement cases is governed by 28 U.S.C. § 1400.  Specifically, § 1400(b) provides that venue can be laid either (1) where the defendant "resides" or (2) where the acts of infringement occurred and where defendant has a regular place of business.  Under 28 U.S.C. § 1391(c)(2) a corporate entity is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction."

Plaintiffs argue that because this Court can exercise personal jurisdiction over Defendant, the first of the disjunctive tests of § 1400(b) is met and venue is proper in the Western District of Michigan (Dkt 25, Pl. Resp. at 23).  This argument fails, however, in light of this Court's

determination that personal jurisdiction over Defendant cannot be exercised. The second part of § 1400(b) allows an action to commence where the infringement took place if the defendant also has a principle place of business there. Here, as explained *supra*, the infringement, if it occurred at all, took place outside of Michigan. Therefore, venue cannot be laid in the Western District of Michigan.

### C. Transfer

Alternatively, Defendant moves for transfer to a venue that can exercise personal jurisdiction under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631. Both of these statutes permit a district court that has found it cannot exercise jurisdiction to transfer a case to another district that can exercise jurisdiction if such a transfer will serve "the interests of justice." Plaintiffs argue that transfer is irrelevant because jurisdiction exists in Michigan (Dkt 25, Pl. Resp. at 23). Plaintiffs instead argue that forum is proper in this Court under 28 U.S.C. § 1404 because of the location of witnesses and evidence (*id.* at 23-24). Defendants argue that if this Court does not dismiss the present case, there are numerous other forums available in which jurisdiction exists to which this case can be transferred (Dkt 24, Def. Mem. at 19).

Plaintiffs have not presented any arguments as to why transfer would be in the interests of justice. Rather, Plaintiffs have relied on the presupposition that jurisdiction over Defendant exists, and thus transfer is irrelevant. Section 1406(a) instructs that when venue is improper, the district court "shall dismiss" unless transfer of venue would serve the interests of justice. 28 U.S.C. § 1406(a). Because no argument has been made that venue should be transferred, this Court dismisses the case at bar without prejudice.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt 23) under FED. R. CIV. P. 12(b)(2) and FED. R. CIV. P. 12(b)(3) is granted. The Court dismisses Plaintiffs' Complaint (Dkt 1) without prejudice. An Order and corresponding Judgment will be entered consistent with this Opinion. *See* FED. R. CIV. P. 58.


DATED: March _5_, 2012                     /s/ Janet T. Neff
                                           JANET T. NEFF
                                           United States District Judge